Next case, the court calls case number 514-0213, Peoples v. Arbuckle, counsel for the appellant. You may proceed. Thank you, Your Honor. Good afternoon, Your Honors. And may it please the court, counsel. On this appeal, you're Mr. Witten, correct? Yes, Richard Witten for the defendant appellant, Kelly Arbuckle. This appeal, on this appeal we raise two issues. First, this case must be remanded for resentencing on Mr. Arbuckle's murder conviction, since the trial court clearly, but erroneously stated that Mr. Arbuckle was subject to a mandatory consecutive sentence of 50 years based on the firearms enhancement statute. And second, his conviction for aggravated discharge of a firearm conviction can only be vacated under the one act one prime rule because the state's charging document did not differentiate between the shot that killed the victim and the one or more shots fired into the same vehicle at the same time that constituted the aggravated discharge of a firearm conviction. With respect to the first issue, when it sentenced Mr. Arbuckle, the court below first imposed the 50 year sentence for the murder and then added, and I quote, on top of the 50 years, since this was a murder committed through the use of a firearm, there is a mandatory consecutive of 50 years I'm imposing on him, unquote. In fact, what the statute actually provides is a range of sentences from 25 to natural life. So in our view, it's our position, basically applying common rules of grammar and English usage. The court made a mistaken statement regarding what the law actually provides. By way of analogy, if I were to say to someone, since I filed an appeal, there is a mandatory brief of no more than 50 pages I must file, most people would understand that statement to mean that the 50 page limit is part of what is mandatory. Very few people would listen to a sentence like that and decide, well, it must be parsed. And yes, the brief is mandatory. But when I said it's a mandatory brief of 50 years, the other 50 years is just something that I made up. It's my discretion. And yet that is essentially what the state is asking this court to conclude when Judge Schwartz in the court below said there was a mandatory consecutive of 50 years I'm imposing upon him. And not only that, even if we allow for the possibility that that is what the court below intended to make that statement, that it was really using its discretion on the 50 years part, the standard that has to be satisfied here is that it's beyond argument that the court's apparent mistake of law arguably influenced the decision. And that comes from our Supreme Court in the Eddington case. So even if it's possible that the court might have meant I'm using my discretion when I said about 50 years, as long as it arguably influenced the sentencing decision, this has to go back. And I think the underlying message of the Eddington decision was basically our Supreme Court saying let's err on the side of caution. If it's even arguable that this mistake of law as it explicitly, the actual rule is, if a misstatement of understanding of the when there's a necessity to use sentencing hearing when it appears that the mistaken belief of the judge arguably influenced the sentencing decision. So clearly what the court was signaling here was that let's err on the side of caution because if it's even possible that this sentence was the result of a mistake of law, why not send it back and give the judge another chance to get it right? The judge may very well say, you know, it really was my discretion. I mean, it's still 50 years, fine, but there is no harm in sending it back to make sure that this was not the result of an error of mistake of law on the part of the court below. In response, the state has basically argued the rule that the trial court judge is presumed to know and follow the law. And that's certainly true, but the presumption is clearly overcome in this case because he made an explicit statement indicating that he had a mistaken view of the law. And for that reason, following Eddington, it's clear that this does have to have to go back and give the court an opportunity to revisit this statement that it made when it sentenced him. With respect to the second issue that we raised in this, under the One Act, One Crime doctrine, a defendant may not be convicted of multiple offenses that are based upon the same physical act. This is well settled. This goes back to the King case in 1977. Here, basically what the evidence was is that the defendant fired several shots in the vehicle, one of which struck and killed Toren Stanley, the victim. And that was the basis for the murder charge. It is our position, based on the applicable case law, cases like Presco, Green, and Guyton that I cited in our brief, that when you have a closed series of connected events, not literally the same event, because each squeeze of the trigger could be looked at as separate, but when it's in a close succession of events like this, as it was in Presco, Green, and Guyton, then whether it's treated as multiple acts or a single act depends upon the charging document. And what we have here is the charging document did not distinguish between the shot that killed Toren Stanley and the shot, or shots, that was the basis for the aggravated discharge of a firearm conviction. As a matter of fact, the charging document didn't even say shots. It just said shot, that he discharged his weapon in the direction of a vehicle. Now, the state, in its appellee's brief, says, well, if there was more than one victim, therefore, that could sustain the additional conviction. But again, we look at the charging document. The charging document, what he was charged with was filing in the direction of a vehicle, knowing it to be occupied. Didn't the charging document say one or more victims? To know it to be occupied by one or more persons, and that's the statutory standard, but that doesn't mean that there are victims. And I cited to the Hardin case, which is very close on the facts. The only difference was it was a slightly different statute regarding firing in the direction of a vehicle, knowing it to be occupied by a police officer. And the Hardin court, your sister circuit district in the first district, argued that because the analysis here is that he fired in the direction of a vehicle, the police officers, there were two officers in the vehicle, may have been victims in a colloquial sense, but that's not what we're talking about here. It could only sustain one conviction because he fired at a vehicle. And I drew the analogy in my reply brief that, you know, under the state's interpretation of this, if someone fires a couple of shots at a bus, occupied by 50 people, one of them strikes and kills someone, you have a murder conviction, but you can't have 49 convictions for aggravated discharge of a firearm because there were 49 other victims. Now, if it was charged differently, if in this case the state had charged Mr. Arbuckle with, in addition to firing a shot that intentionally or knowingly killed Torrance Stanley, and firing in a vehicle in an attempt to hit Cunard Forti, who was actually the intended target of Mr. Arbuckle, this might be a different case. But the state is bound by what it charged Mr. Arbuckle with, firing in the direction of a vehicle. And because it clearly did not distinguish between the shot that was the murder and the shot of shots that was the aggravated discharge in its own charging document, then we have to follow the law from Crespo and Green and Guyton and say that because the state did not do this, the aggravated discharge of a firearm conviction cannot stand under the One Act, One Crime rule because it has to be considered a single act. For these reasons, we ask for this relief that the case be remanded to the circuit court for resentencing and that this court vacate the conviction for the aggravated discharge of a firearm. Thank you, Mr. Whitney. You'll have an opportunity for rebuttal. Counsel for the appellee. May I introduce the court? My name is Sharon Shanahan and I represent the people of the state of Illinois. Once again today, I am arguing for this court a case briefed by Ms. Schwartz. I would like to sort of switch gears here a little bit and find out too often and then I start on one issue and I never get a chance to talk about the second issue. And since this court granted the state's motion to cite additional authority, I'd like to start with issue two regarding the One Act, One Crime rule because I think that defendant doesn't understand the state's argument as to the applicability of Miller and Killebrew. The defendant says he is proceeding exclusively on the question of whether his conduct constituted multiple acts or one single act. And that the law from King, from Presco, certainly does apply to One Act, One Crime questions, but the point of Miller and Killebrew is not which of the two prongs, whether it's multiple acts or one and the second prong, if it is multiple, which one is the lesser included of the One Act, One Crime doctrine. The question is what approach applies in deciding whether the defendant's conduct constituted multiple acts or one single act. And that's where the distinction between the abstract elements approach and the charging instrument approach come into play. In oral argument here today, the defendant mentioned several times the charging doctrine, but it was charged differently. If this was a case in which the defendant was charged with one act and the question was, is this One Act, One Crime or not, that would make sense. But as Miller sets forth, as Killebrew sets forth, if the defendant is charged with two separate crimes, this defendant was. He was charged with murder. He was charged with, I'm having a moment, so I don't even remember the second charge. I am not familiar with the record here, but he was charged with two different offenses. In People v. Miller, this is what the Supreme Court said. The justifications for using the charging instrument approach with respect to uncharged offenses has no applicability when dealing with charged offenses. Notice is simply not an issue. Moreover, if a defendant is charged with both offenses, the jury will be instructed on both and thus given the option to convict him of only the less serious offense. Likewise, allowing convictions on both charged offenses under the abstract elements test will ensure that the defendant are held accountable for the full measure of their conduct and the harm caused. They go on to say it is illogical to apply the charging instrument approach when it would defeat the legislative intent. Accordingly, we find no reason to apply the charging instrument approach when the defendant is charged with multiple offenses and the issue is whether under King, one offense is a less included offense of the other. They note that they're making new law today in saying, in short, today's opinion represents the first occasion for this court to consider with the benefit of briefing and argument which approach should be applied under the One Act, One Crime doctrine to determine whether one offense is a less included offense of another. So, they're not saying, I suppose, bad law. They're not saying that the cases cited by the Senate are no longer good law. They're just talking about which approach. Because if you look back on the history of the One Act, One Crime legislation, there was always this question, well, is this the charging instrument approach or is this the abstract elements test? And the cases went back and forth. Miller, to a certain extent, and Kellegrue, to a greater extent, focus on when we're deciding this, what is the approach that we're going to use? And under this case, where we have two charged offenses, the abstract elements test applies. And under this approach, if all of the elements of one offense are included within a second offense, and the first offense contains no elements not included in the second offense, the first element is deemed a lesser included offense of the second. I think this is a lot clearer. It must be impossible to commit the greater offense without necessarily committing the lesser offense. And that's Kellegrue at paragraph 29, which is citing Miller. So that's the point that the State made in its motion to cite additional authority. It was brought out in the opening briefs in the discussion of Miller. But I think Kellegrue makes it clear that the way you decide whether this is a lesser included offense or not is defined by how it's charged. So the State disagrees with the discussion about the charges, the crimes as they were charged. Test is the abstract element. Touching briefly on the sentencing issue, the trial court's holding, the quote that is included in the brief, clearly is not a complete sentence. It's clearly got a word, phrase, whatever missing. But it is not, compared to the Eddington and Moore, it is not a clear misstatement of the law. If you kind of read it, scratch your head and say, what? But that's why, although it is inarticulately stated, we do have this presumption of a trial court knowing the law and applying it correctly. And I think when you start with that presumption and you look at the conversations that preceded this ruling, we have the trial court reiterating that the statute requires an additional sentence from 25 years up to a life term to be determined at the trial court's discretion. And that was correct for sentencing. We have, going all the way back to pretrial, we have the State saying this court is required to impose a 25 to life sentence in the arguments at sentencing. We again discussed the mandatory enhancement of 25 years to life as a sentencing option. The defense counsel talked about enhancement of 25 years to life. And minutes before the trial court handed down the sentence, the State gave its recommended sentence of, we do not think that a minimum 25 is appropriate, and they went on to recommend a 30-year extension. And the defense counsel argued that it shouldn't accept the State's recommendation because in part the defendant was already guaranteed 25 years to natural life. It's implausible that the trial court would mention the range for committing a murder with a firearm, listen to attorneys for the State, and the defendant, discuss the range, and then not let them off. I think the court was saying that it was, I think it is clear when you look at the entire record and the presumption that the trial court knows the law that it, he was saying that he was adding an additional 50 years. Moore and Eddington, both of those judges, both of those trial courts specifically did say the wrong thing. They said, in Moore, the trial court said it's belief was that the charge of attempted murder carries with it a minimum of four years in the penitentiary. No question about it. That's wrong. There's no inarticulate statement there. That's wrong. In Eddington, the judge said, there are aggravating factors which are present in connection with this offense that call for a higher sentence than the minimum of four years prescribed by the statute. That's wrong. That's a very clear statement of the law, and it's wrong. The other thing is that the defendant argues that this court, based on Eddington, and this court should err on the side of caution when, in fact, in Eddington, the trial court fell and the attempt court fell. No error. Thank you, counsel. Mr. Wigg. Thank you, Your Honor. With respect to the charging instrument  raised by counsel, I would commend to the court that it refute my objection to the additional authority that I filed. I don't fault the court for erring on the side of allowing additional authority, but there were reasons why we objected to it. It's simply inapplicable. If I might use a sports analogy, if I'm making an argument that the basket didn't count because he was out of bounds when he shot the ball, it's no answer to that argument to say, but the tapes show that he got the shot off before the buzzer. It's answering a different argument. Quoting from the athlete's brief at the bottom of page 8 into page 9. Decisions following King have explained that the One Act, One Crime doctrine requires a two-step analysis. Citation. First, the court must determine whether the defendant's conduct constituted multiple acts or one single act. Second, if the conduct involved multiple acts, the court must determine whether any of the offenses charged are lesser-included offenses. And it goes on from there in Sykes-Miller. That is a correct statement of the law, but you only get to the lesser-included offense analysis if you go to Prom 2. If you're relying on the proposition that this was one act and not multiple acts, you don't get to Prom 2. And the entire analysis of whether the charging instrument approach applies or the abstract elements approach applies is completely irrelevant. My argument sinks or swims in the proposition that this was a single act. That the four shots at one vehicle following Crespo in that line of cases means it needs to be treated as one act. Yes, you do look at the charging document, but you only look at the charging document to apply the Crespo analysis of whether it distinguishes between the, you know, in Crespo who stabs with a knife here and shots with a gun, but whether it distinguishes between them and how it charges has absolutely nothing to do with the charging instrument approach or abstract elements approach that pertains only to whether something is a lesser-included offense or not. So, I want to make it clear. You know, the State can argue that yes, not a lesser-included offense. I make no assertion one way or the other on that. I'm arguing solely under the first prong of the analysis. So I did want to make that clear. With respect to the first argument, I would say yes, there were circumstances where other people indicated that they did know what the proper range of sentencing was for firearms enhancement. So what? The court made an explicit statement indicating that it had a difference understanding. And we cannot assume, given that it made that statement, that it understood and had implied the law correctly when it made that explicit statement. It is possible for a court to not pay close attention to the arguments of counsel. We wish it doesn't happen very often, but it's certainly possible that this could happen. And the court had it fixed in its mind as a mandatory consecutive of 50 years. And a couple of comments made by counsel simply got by them. In any event, we are on the side of caution here and must go back to find out whether that did or not happen. Thank you, Your Honor. I do reiterate my call for that motion. Thank you, counsel. The court will take the matter into advisement and issue a decision in due course.